IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NAPOLEON McCORVEY,          )
    Plaintiff,                    )
                            )
v.                          )  CIVIL ACTION NO. 1:17-00396-N
                            )
NANCY A. BERRYHILL, *Acting*   )
*Commissioner of Social Security*, )
    Defendant.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Napoleon McCorvey brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Upon consideration of the parties' briefs (Docs. 11, 15) and those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

### I. *Background*

On October 24, 2012, McCorvey filed an application for a period of disability

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 20).

and DIB[2] with the Social Security Administration ("SSA"), alleging disability beginning October 23, 2011. After his application was initially denied, McCorvey requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. After holding a hearing, an ALJ issued a fully favorable decision granting McCorvey's application on April 1, 2014. (*See* R. 107 – 115).

The SSA's Southeastern Program Service Center ("SEPSC") subsequently became aware of evidence suggesting that McCorvey had engaged in substantial gainful activity during the adjudication period relevant to his application, and gave notice of this evidence to the SSA's Office of Appellate Operations. (*See* R. 195 – 200). Based on this new evidence, on February 17, 2016, the Appeals Council for the Office of Disability Adjudication and Review vacated the ALJ's April 1, 2014 fully-favorable decision on its own motion[3] and remanded with instructions for the

---

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[3] The Commissioner "may reopen a final determination or decision on [her] own initiative [and] revise that determination or decision" under the conditions explained in 20 C.F.R. § 404.988. *See* 20 C.F.R. § 404.987(b). Under § 404.988(b), a "determination, revised determination, decision, or revised decision may be reopened…[w]ithin four years of the date of the notice of the initial determination if [the Commissioner] find[s] good cause…to reopen the case…" "[G]ood cause to reopen a determination or decision" may be found if, *inter alia*, "[n]ew and material evidence is furnished…" 20 C.F.R. § 404.989(a)(1). McCorvey does not claim that the Appeals Council lacked good cause to reopen his case.

ALJ to issue a new decision.[4] (*See* R. 117 – 123). Following remand from the Appeals Council, a second ALJ,[5] after holding a hearing on December 21, 2016, issued an unfavorable decision on February 6, 2017, finding McCorvey not entitled to benefits. (R. 10 – 25).

The second ALJ's unfavorable decision became the Commissioner's final decision when the Appeals Council denied McCorvey's request for review of the decision on July 14, 2017. (R. 1 – 5). McCorvey subsequently filed this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

---

[4] "The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision. The Appeals Council may also remand a case in which additional evidence is needed or additional action by the administrative law judge is required…The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(a)-(b).

[5] A different ALJ was assigned to McCorvey's case after the ALJ who made the initial fully favorable determination recused himself following remand. (*See* R. 13 – 14, 54 – 55, 246).

## II.  *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that

come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[6] "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[6] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

*See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520,

1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB…requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E)…A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[7]

---

[7] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[8]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). However, "the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as

---

[8] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Analysis*

The second ALJ's unfavorable decision did not proceed past Step One because the ALJ determined that, from October 23, 2011, his alleged disability onset date, through September 30, 2016, his date last insured, there was no continuous 12-month period during which McCorvey did not engage in substantial gainful activity in providing services to a nightclub business. In the first of his two claims of reversible error, McCorvey claims the ALJ erred by finding that McCorvey's substantial gainful activity during the adjudication period did not qualify as a "trial work period." The undersigned disagrees.

The Social Security statutes allow for those entitled to Title II benefits to engage in "trial work periods," during which "any services rendered by an individual

during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." 42 U.S.C. § 422(c). "Under the regulations, a disabled claimant is entitled to a nine-month 'trial work period' during which he can engage in substantial gainful activity and continue to receive disability benefits." *Johnson v. Sullivan*, 929 F.2d 596, 597 (11th Cir. 1991) (per curiam) (citing 20 C.F.R. § 404.1592).[9] However, a claimant is not entitled to a trial work period if, *inter alia*, the claimant "perform[ed] work demonstrating the ability to engage in substantial gainful activity within 12 months of the onset of the impairment(s) that prevented [the claimant] from performing substantial gainful activity and before the date of any notice of determination or decision finding that [the claimant is] disabled…" 20 C.F.R. § 404.1592(d)(2)(iii). *See also Barnhart v. Walton*, 535 U.S. 212, 224-25 (2002) (upholding § 404.1592(d)(2)(iii) as a "reasonable interpretation" of Social Security statutes).[10]

---

[9] "A claimant who demonstrates an ability to remain gainfully employed during this period will, thereafter, lose his entitlement. Following the trial work period, however, there is a 'reentitlement period' during which, if the substantial gainful activity ceases, benefits will be reinstated without reapplication." *Johnson v. Sullivan*, 929 F.2d at 597 (citing 20 C.F.R. § 404.1592a).

[10] The SEPSC's letter to the Office of Appellate Operations stated that the "trial work period provisions do not protect th[e] work activity" McCorvey was found to have engaged in during the adjudication period (R. 195); both the Appeals Council and the second ALJ noted that finding. (*See* R. 16, 198). Moreover, in both its notice to McCorvey informing him of its intent to reopen his case, and its order vacating the initial fully-favorable decision, the Appeals Council expressly informed McCorvey that, "[w]here an individual returns to work at the substantial gainful activity level within 12 months of the date her disability began and before an award of benefits, the Agency will deny her claim or not find her disabled until after she

The ALJ determined that McCorvey worked as a "self-employed person" during the adjudicatory period. As the ALJ's decision discusses (*see* R. 19), under the Social Security regulations, the Commissioner will consider the claimant's activities and their value to the claimant's business to decide whether the claimant has engaged in substantial gainful activity if he is self-employed, and will not consider income alone because the amount of income the claimant actually receives may depend on a number of different factors, such as capital investment and profit-sharing agreements. 20 C.F.R. § 404.1575(a)(2). For self-employed persons, the Commissioner will "determine whether [a claimant] ha[s] engaged in substantial gainful activity by applying three tests." *Id.* *See also* Social Security Ruling (SSR) 83-34, 1983 WL 31256 (1983). Under the first test, dubbed the "Significant Services and Substantial Income" test, work activity will be considered substantial gainful activity if the claimant renders services that are significant to the operation of the business and receives a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i); SSR 83-34, 1983 WL 31256, at *2.

The ALJ expressly found that "the income from the nightclub business reported in [McCorvey]'s income tax returns for the calendar year[] 2012…is more than sufficient to satisfy the 'substantial income' prong of the 'Significant Services

---

stops performing SGA[,]" which substantively explains § 404.1592(d)(2)(iii). (R. 120, 198 (generally citing *Barnhart v. Walton*, 535 U.S. 212)). Thus, while McCorvey may be correct that the second ALJ's decision did not explicitly explain why he did not qualify for a trial work period, the Commissioner gave McCorvey sufficient notice prior to the second ALJ's decision that he would not qualify for a trial work period, and the substance of the second ALJ's decision confirms that McCorvey was so disqualified under § 404.1592(d)(2)(iii).

and Substantial Income' test." (R. 19). The ALJ then determined that there was "substantial evidence in the record from which it can be concluded that [McCorvey] rendered management services to the nightclub business for more than 45 hours per month in 2012…, thus satisfying the 'significant services' requirement of the first test. (R. 21); 20 C.F.R. § 404.1575(b)(1) ("If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the business."). The "substantial evidence" cited by the ALJ in support of the "significant services" requirement included, *inter alia*, evidence that McCorvey had signed a number of checks for the nightclub business during the months of January and July of 2012 (R. 21), both of which were within the 12-month period of the alleged onset date. McCorvey disputes none of those findings here. Thus, the ALJ's decision adequately shows that McCorvey was disqualified from participating in a "trial work period" under § 404.1592(d)(2)(iii) because he engaged in substantial gainful activity within 12 months of the alleged onset date and before the date of the 2014 fully favorable decision.

For his second claim of error, McCorvey argues that the ALJ should have found that he did not engage in substantial gainful activity after July 11, 2016, when the nightclub allegedly burned down – since, as McCorvey claims, he "could not have performed any work at a nightclub that had burned and was no longer in

business" (Doc. 11 at 3) – and should therefore have proceeded to the remaining steps of the sequential evaluation for the period of time between the fire and the date last insured. Contrary to McCorvey's assertion, however, the ALJ did not "acknowledge he stopped performing SGA" after the nightclub fire. (*Id.*). While the ALJ did acknowledge that there was evidence "a fire…occurred at the nightclub on July 11, 2016[,]" this observation was made in noting McCorvey's explanation for the dearth of information and documents he produced in response to the ALJ's discovery requests, which was that much of the requested material was lost in the fire. (R. 21). Moreover, even if the nightclub actually ceased operating after the fire, it does not necessarily follow that all business-related tasks – banking, managing business assets, paying bills, preparing paperwork, winding-up activities, etc. – ceased on that date.

Nevertheless, even accepting as true McCorvey's claim that his substantial gainful activity ended with the nightclub fire, McCorvey would still not have been entitled to benefits for the relevant adjudicatory period. In order to be eligible for benefits, a claimant must, *inter alia*, be "under a disability[,]" 42 U.S.C. § 423(a)(1)(E), which generally means that the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" *Id.* § 423(d)(1)(A). McCorvey has not substantively challenged the ALJ's determination that he engaged in continuous substantial gainful activity prior to the nightclub

fire, which occurred less than 2 months before September 30, 2016, McCorvey's date last insured. Therefore, at most, McCorvey could only have demonstrated an impairment that prevented him from engaging in any substantial gainful activity for approximately 2 months during the adjudicatory period, which is insufficient to show disability under the Social Security Act. *See Moore*, 405 F.3d at 1211 ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

Accordingly, the Court **OVERRULES** McCorvey's claims of reversible error and therefore finds that the Commissioner's final decision denying him benefits is due to be **AFFIRMED**.

## IV. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying McCorvey's October 24, 2012 application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 20th day of November 2018.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**